# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No.: 2:18-cr-00328-JAD-NJK |
| Plaintiff | **Order Overruling Objection to the PSR** |
| v. | [ECF No. 26] |
| Edgar Espinoza, | |
| Defendant | |

Defendant Edgar Espinoza pled guilty to one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). In its Presentence Investigation Report (PSR), the U.S. Probation Office calculated Espinoza's base-offense level as 20 based on its determination that his prior conviction for Nevada third-degree arson, NRS 20.020, constitutes a crime of violence.[1] Espinoza objects to that calculation, arguing that Nevada arson is broader than the generic definition of arson—and thus not categorically a crime of violence—because a defendant can be convicted of Nevada arson as an aider and abettor. This argument is premised on his assertion that the U.S. Sentencing Commission impermissibly expanded the crime-of-violence definition by including accomplice liability in that definition's commentary rather than its text. But because aiding and abetting is a theory of criminal liability inherent in all Nevada crimes rather than a separate offense, I find that the relevant commentary is consistent with the crime-of-violence definition and is thus authoritative. So, I overrule Espinoza's objection.

---

[1] PSR at 6; U.S. Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (U.S. Sentencing Comm'n 2018) (setting a base-offense level of 20 if . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense").

**Discussion**

The guideline for firearm offenses incorporates the crime-of-violence definition used in the career-offender guideline,[2] which, under the current 2018 edition, includes a prior felony conviction that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, **arson**, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).[3]

The first portion of this definition is commonly known as the "force" or "element" clause, while the second part is the "enumerated offenses" clause. Prior to 2016, the Sentencing Manual also included a third catchall provision known as the "residual clause."[4] But after the U.S. Supreme Court held in *United States v. Johnson* that an identically worded residual clause in the Armed Career Criminal Act was void for vagueness,[5] the Sentencing Commission removed the clause from subsequent editions.[6]

---

[2] U.S.S.G. § 2K2.1, Application Note 1 ("'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.").

[3] *Id.* § 4B1.2(a) (2018) (emphasis added).

[4] *E.g.*, *id.* § 4B1.2(a)(2) (2015) (including in the definition any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another").

[5] *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015).

[6] Although it was widely perceived after *Johnson* that the residual clause under the career-offender guideline was also void for vagueness, the Supreme Court held in 2017 that the "Guidelines are not subject to a due process vagueness challenge . . . ." *Beckles v. United States*, 137 S. Ct. 886, 897 (2017). By that point, however, the Sentencing Commission had removed the residual clause from the Guidelines, and it has so far chosen not to return the clause to the crime-of-violence definition.

2

To determine whether a prior state or federal felony conviction is a crime of violence, courts must apply the categorical approach and (in the context of the enumerated-offense clause) compare that crime's elements to the elements of one of the listed generic offenses.[7] "In other words, [courts must] ignore the facts of the case and simply 'line up the crime's elements alongside those of the generic offense and see if they match.'"[8] "If the crime of conviction falls within the generic federal definition—meaning it does not punish a broader range of conduct than the generic offense—the conviction qualifies as a crime of violence."[9] Conversely, a prior offense is overbroad if it "criminalizes any conduct not covered by the generic offense . . . ."[10]

Espinoza argues that Nevada third-degree arson is overbroad because the statute criminalizes not only the "willful and malicious" burning of property covered by generic arson[11] but also explicitly extends liability to a person who aids and abets those acts.[12] Although accomplice liability is not built into the generic definition of arson, Espinoza acknowledges that Application Note 1 to the career-offender guideline states that the crime-of-violence definition

---

[7] *United States v. Studhorse*, 883 F.3d 1198, 1203 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 127, (2018). A generic offense reflects how a particular crime has been traditionally defined, an inquiry that federal courts conduct through reference "to the common law, the Model Penal Code, treatises, and the laws of other states . . . ." *United States v. Door*, 917 F.3d 1146, 1151 (9th Cir. 2019).

[8] *Studhorse*, 883 F.3d at 1203 (alterations omitted) (quoting *Mathis v. United States*, 136 S. Ct. 2243 (2016)).

[9] *Door*, 917 F.3d at 1151.

[10] *United States v. Vederoff*, 914 F.3d 1238, 1244 (9th Cir. 2019).

[11] *United States v. Spencer*, 724 F.3d 1133, 1141 (9th Cir. 2013) ("[W]e have described the modern, generic definition of arson as willful and malicious burning of property." (internal quotation marks and citation omitted)).

[12] Nev. Rev. Stat. § 205.020 ("A person who willfully and maliciously sets fire to or burns or causes to be burned, or *who aids, counsels or procures the burning of* [enumerated types of property] . . . is guilty of arson in the third degree . . . ." (emphasis added).

3

"includes the offenses of aiding and abetting, conspiring, and attempt[] . . . ."[13] Nonetheless, Espinoza contends that this commentary is not controlling in this context. His argument is premised on *Stinson v. United States*, in which the Supreme Court held that the Guidelines' commentary—which, unlike its text, is not reviewed by Congress—"is akin to an agency's interpretation of its own legislative rules."[14] Accordingly, "commentary . . . that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."[15]

Espinoza cites to three post-*Johnson* circuit-court cases that have applied this framework to determine Application Note 1's effect on the crime-of-violence definition once stripped of its residual clause.[16] Each case addressed whether a defendant's prior offense was a categorical match for a generic offense listed only in that commentary—e.g., robbery—rather than in the enumerated-offenses clause under the guideline's text.[17] Each court reasoned that, without its residual clause, the career-offender guideline "sets forth a limited universe of specific offenses

---

[13] U.S.S.G. § 4B1.2 cmt. n.1.

[14] *Stinson v. United States*, 508 U.S. 36, 40–41, 44–45 (1993).

[15] *Id*. at 38; *see also id*. at 45 ("As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))).

[16] ECF No. 26 at 7–12. These cases were decided before the Supreme Court held in *Beckles* that the Guidelines were not subject to vagueness challenges, *see supra* note 6, and each court of appeals held or assumed without deciding that the career-offender guideline's residual clause was void. *United States v. Bell*, 840 F.3d 963, 968 (8th Cir. 2016), *overruled on other grounds by United States v. Swopes*, 886 F.3d 668 (8th Cir. 2018); *United States v. Rollins*, 836 F.3d 737, 741 (7th Cir. 2016) (en banc); *United States v. Soto-Rivera*, 811 F.3d 53, 59 (1st Cir. 2016).

[17] *Bell*, 840 F.3d 967 (addressing generic robbery, which was then listed only under Application Note 1 but was later moved into the enumerated-offenses clause in the Sentencing Manual's 2016 edition); *see also Rollins*, 836 F.3d at 740 (possession of a sawed-off shotgun); *Soto-Rivera*, 811 F.3d 53, 59 (possession of a machine gun).

4

that qualify as a 'crime of violence.'"[18] In other words, these courts appear to conclude that Application Note 1 "solely interprets the guideline's residual clause by providing examples of what generic felonies would 'involve[] conduct that presents a serious potential risk of physical injury to another.'"[19] So, without this clause, this commentary is not *interpreting* either the force or enumerated-offenses clause but rather *adding* to the guideline's limited universe of crimes of violence—a result that these courts held is inconsistent with the guideline's text under *Stinson*.[20]

Espinoza argues that, in the absence of clear guidance from the Ninth Circuit on this issue,[21] the same reasoning applies here, and Application Note 1's inclusion of accomplice liability likewise seeks to impermissibly expand the crime-of-violence definition. But even if these cases were correctly decided—a question I need not and do not reach—they are

---

[18] *Soto-Rivera*, 811 F.3d at 60; *see also Bell*, 840 F.3d at 968 (agreeing with *Soto-Rivera*); *Rollins*, 836 F.3d at 743 (same).

[19] *United States v. Givens*, 268 F. Supp. 3d 1108, 1118 (D. Nev. 2017) (emphasis omitted) (quoting the residual clause in the 2001 edition of the Sentencing Manual).

[20] *E.g.*, *Rollins*, 836 F.3d at 742 ("If the application note's list is not interpreting one of those two subparts—and it isn't once the residual clause drops out—then it is in effect *adding* to the definition. And that's *necessarily* inconsistent with the text of the guideline itself.").

[21] The Ninth Circuit has signaled on at least two occasions that it was unpersuaded by the above-cited authorities, but the scope of these decisions is unclear, and the parties devote almost no analysis to them. ECF No. 26 at 6. In *United States v. Studhorse*, the court found that it was *not* inconsistent for Application Note 1 to include attempted murder—which appeared only in the commentary at that point—as a crime of violence, summarily dismissing the above-cited authorities as "pre-*Beckles*, out-of-circuit cases . . . ." 883 F.3d at 1206; *see also United States v. Studhorse*, 16-30299 (9th Cir.) at Dkt. No. 4 (defendant's opening brief citing these authorities and asserting the same arguments raised here). Similarly, in an unpublished disposition, the court found that there was "no inconsistency" in the inclusion of robbery under Application Note 1 but also highlighted that, under *Beckles*, the Guidelines are not subject to vagueness challenges. *United States v. Biddles*, 707 F. App'x 461, 463 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1035 (2018). Because both cases addressed versions of the crime-of-violence definition that included a residual clause, and it appears the Ninth Circuit relied in part on the fact that the clause is not void for vagueness, it is not clear how the court would rule on a challenge to the current iteration of the definition, which has voluntarily continued to exclude the clause. *See supra* note 6.

5

distinguishable from the portion of Application Note 1 at issue in this case. Each decision addressed portions of that commentary that attempted to extend the crime-of-violence definition to a substantive crime not included in the guideline's text at the time: robbery, possession of a sawed-off shotgun, and possession of a machine gun.[22] By contrast, the categorical analysis here hinges on whether the generic definition of arson—which is included in the guideline's text—encompasses a prior federal or state arson conviction that can result from a defendant aiding and abetting the crime's commission and not committing the actus reus himself.

Unlike the crimes addressed in Espinoza's authorities, aiding and abetting is not a separate offense but rather a theory of criminal liability.[23] Nevada, like all states, has abolished the common-law distinction "between an aider or abettor to a crime and an actual perpetrator of a crime. Both are equally culpable."[24] Accomplice liability is inherent in all criminal offenses.[25] It is not a distinct charge that the State of Nevada must allege in an indictment.[26] Nor does a judgment in a criminal prosecution distinguish whether the defendant was an actual perpetrator or an aider or abettor. And because both state and federal prosecutors commonly allege

---

[22] *See supra* note 17.

[23] *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("It follows that aiding and abetting is a different means of committing a single crime, not a separate offense itself, for otherwise it could not be implicit in a substantive charge.").

[24] *State v. Plunkett*, 429 P.3d 936, 938 (Nev. 2018) (internal citation, brackets, and emphasis omitted); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) ("[E]very jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors . . . ." (internal quotation marks and citation omitted)).

[25] *Plunkett*, 429 P.3d at 938 ("This court has interpreted [Nevada's aiding-and-abetting statute] to have expansive application across the criminal code."); *see also United States v. Valdivia-Flores*, 876 F.3d 1201, 1207 (9th Cir. 2017) ("The implicit nature of aiding and abetting liability in every criminal charge is sufficiently well-settled that the government in this case does not contest it."); *Garcia*, 400 F.3d at 820.

[26] However, if the State intends to pursue an aiding-and-abetting theory, it must allege that theory under the substantive crime charged. *Barren v. State*, 669 P.2d 725, 729 (Nev. 1983).

6

alternative theories of liability under the same charge—i.e., perpetration of the crime, accomplice liability, co-conspirator liability—it is often impossible to discern what theory a jury relied on in reaching a guilty verdict.[27] So, although Nevada's third-degree arson statute builds in an aiding-and-abetting provision, it is not substantively different from all other Nevada crimes. Indeed, as the government points out, if Espinoza's argument is pursued to its logical end, then no state or federal conviction could categorically match the generic offenses under the enumerated-offenses clause because every conviction could have resulted from an aiding-and-abetting theory and therefore be overbroad.[28]

Espinoza does not squarely address the unique nature of accomplice liability but rather cites to cases involving conspiracy and attempt, which are also addressed in the same portion of Application Note 1 that raises aiding and abetting. In *United States v. Rollins*, one of the post-*Johnson* cases addressed above, the en banc Seventh Circuit overruled a prior decision in which the court had held that conspiracy to commit Indiana robbery was a crime of violence.[29] But conspiracy to commit a crime is a substantive offense independent of whether any of the

---

[27] *See, e.g.*, *Bolden v. State*, 124 P.3d 191, 201–02 (Nev. 2005) ("Because the jury returned a general verdict, whether or not the jury rested its decision on [coconspirator liability or the State's "alternative theories of direct participation and aider and abettor liability"] is not discernible; we can only speculate as to the basis for the jury's decision."), *overruled in part on other grounds*, *Cortinas v. State*, 195 P.3d 315, 324 (Nev. 2008).

[28] ECF No. 29 at 7. The Ninth Circuit recently held that Washington State's drug-trafficking statute was broader than the generic "aggravated felony" at issue due to the state's aiding-and-abetting statute—which effectively means that no Washington conviction can categorically be an aggravated felony. *Valdivia-Flores*, 876 F.3d at 1208–09. But that decision stemmed from the fact that Washington's abetting-and-abetting statute itself was broader than the generic analogue, requiring mere knowledge rather than a specific intent to facilitate the crime's commission. *Id.* at 1207. Espinoza has not challenged the breadth of Nevada's aiding-and-abetting statute.

[29] *Rollins*, 836 F.3d at 743 (overruling *United States v. Raupp*, 677 F.3d 756, 757 (7th Cir. 2012) ("Raupp was convicted . . . of conspiring to violate . . . Indiana's robbery statute. Application Note 1 to § 4B1.2 tells us that an inchoate offense such as conspiracy is a 'crime of violence' when the underlying crime is one.")).

7

conspirators ultimately committed the intended offense.[30]  And a conspiracy charge is different than the co-conspirator theory of liability, which, like aiding and abetting, creates a means of finding a defendant culpable of a crime for which he did not commit the actus reus.[31]  So, the Seventh Circuit's conclusion that conspiracy to commit robbery is no longer a crime of violence does not address the more apposite question, for instance, of whether a robbery conviction resulting from co-conspirator or accomplice liability is a categorical match for generic robbery.[32]

I am similarly unpersuaded by Espinoza's citation to *United States v. Winstead*, in which the D.C. Circuit held that the same portion of Application Note 1 impermissibly seeks to expand the separate Guidelines definition for a "controlled substances offense" to attempt crimes.[33]  Unlike aiding and abetting and co-conspirator liability, an attempt to commit a crime is a separate substantive offense that entails its own elements and penalties rather than a theory of liability.[34]  Although I do not reach the question of whether an attempt to commit any crime in the enumerated-offenses clause constitutes a crime of violence, *Winstead* has no bearing on accomplice liability.

---

[30] *Pinkerton v. United States*, 328 U.S. 640, 643 (1946) ("It has been long and consistently recognized . . . that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. . . .  A conviction for the conspiracy may be had though the substantive offense was completed.").

[31] *See, e.g.*, *Bolden*, 124 P.3d at 196 ("[W]e must now determine whether there is a valid legal and factual basis supporting Bolden's conviction of the nonconspiracy crimes under the State's theory of vicarious coconspirator liability.").  Nevada recognizes co-conspirator liability but has departed from the *Pinkerton* rule's "natural and probable consequence" approach.  *Id*. at 200–01.

[32] I take no position on whether conspiracy to commit any crime in the enumerated-offenses clause constitutes a crime of violence.

[33] *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018) (citing the Supreme Court's decision in *Stinson* and holding that, "[i]f the [Sentencing] Commission wishes to expand the definition of 'controlled substance offenses' to include attempts, it may seek to amend the language of the guidelines by submitting the change for congressional review").

[34] *See* Nev. Rev. Stat. § 193.330; *Van Bell v. State*, 775 P.2d 1273, 1274 (Nev. 1989).

8

Because aiding and abetting is a theory of criminal liability inherent in all Nevada crimes rather than a separate offense, there is no inconsistency between the text of the crime-of-violence definition and Application Note 1's interpretation that the generic offenses enumerated in that definition include convictions resulting from aiding and abetting. That commentary is therefore authoritative under *Stinson*, so I find that Espinoza's Nevada arson conviction is a crime of violence and overrule his objection to the PSR. I will address his request for a variance, which the government partially supports,[35] at the sentencing hearing.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Espinoza's **objection to the Presentence Investigation Report [ECF No. 26] is OVERRULED.**

Dated: May 30, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[35] EF No. 26 at 16–17; ECF No. 29 at 5–6.